Oral argument to be 15 minutes for plaintiffs and 15 minutes to be chaired by defendants. Good morning, your honors, and may it please the court. I've asked to reserve three minutes for rebuttal. Thank you. My name is Anthony Feta, and I represent the plaintiffs below and the appellants before your honors. We request that the court reverse the judgment below and remand for further proceedings. This case involves a very serious safety defect. The plaintiffs, Jay and Linda Hadley, who are husband and wife, own a 2003 Jeep Grand Cherokee. The safety defect relates to the airbag system. Due to faulty circuitry in the airbag control module, an electric overstress condition occurs. That causes misfiring throughout the occupant restraint or airbag control module, which causes a squib filter to tell the airbag to deploy. When there is no impact, no collision, nothing that under normal circumstances would cause an airbag to deploy. There have been hundreds of reported incidents of this occurring. Vehicles have flipped at highway speeds. They've crashed into trees. They've crashed into other motorists. And they present a very serious safety risk, not only for the owners of these vehicles, but also for surrounding passengers, fellow motorists, pedestrians. The district court dismissed our claims, your honors, because it found that the plaintiffs lacked Article 3 standing. This court's opinions, as well as the Supreme Court's opinions in cases such as Klein v. The United States Department of Energy and Lujan v. The Defenders of Wildlife, have made clear that there are three basic requirements for standing. And I don't think the parties dispute the three basic requirements. And those are that there be an injury in fact. That's the first requirement. The second is that the injury be causally connected or fairly traceable. I'm having trouble with really a more basic question than those that the district court dealt with. It's not clear to me from your complaint that you have even alleged that your client's vehicle had the defect that is the subject of the lawsuit. I mean, what is alleged is it's initially alleged that the class vehicles are initially defined as those with a defect. And then your client is alleged perhaps to have owned a class vehicle. But when you get to all the specific allegations concerning your client, we learn that your client had this light come on. We learn your client went to a dealership. We learn that your client went to the dealership to get a diagnosis. We learn that the dealership did not have parts to do the repair. We do not learn that your car, your client's car, had the complaint about defect. We don't know the results of the diagnosis. It just seems odd that you'd omit to tell us that your client's car did in fact have the defect in any way other than this very indirect allusion. And you seem in the complaint to confuse the ownership of a particular type of vehicle with the concept of being a vehicle with a defect. And yet the notice that was sent clearly says some of the cars have the defect. So how do you respond to that? I mean, why wouldn't you just straightforwardly allege that your client's car has been determined to have the defect that is complained of? Thank you, Your Honor. In fact, the complaint does allege that our client's vehicle has the defect. But the notice, Your Honor, went to only those vehicle owners whose vehicles had the defect. How would they know if they had the defect? Before they even looked at the car, they would have sent the notice would have gone to all the folks who owned the car of a particular type. But if only some of them had the defect, how do you imagine that Chrysler knew in advance which cars within that group had the defect? Chrysler determined that cars of certain model years manufactured during certain date ranges, including the plaintiff's vehicles, had the defect. All of them? Correct, Your Honor. And the notice says some of them. I believe that notice relates that the sum relates to the dates of manufacture. So though there are 2002 model year vehicles manufactured. It's not made to the specific way in which I'm supposed to tell that in the complaint. Yes, Your Honor. Paragraph 23. The notice itself starts with Chrysler has decided that a defect which relates to motor vehicle safety exists in some 2002 and 2003 model year Jeep Liberty vehicles, and 2002 through 2004 model year Jeep Grand Cherokee vehicles. And the sum, our understanding is that that sum identifies the date ranges of manufacture within that model year. So the notice, our understanding is that it only went to those model year vehicles within the date range of manufacture. That is the problem. And the reason that is is TRW. I know, but all of them, this doesn't indicate that all of them had the defect. And your complaint, as far as I can tell, never tells us that your clients in fact owned a vehicle that was made in one of those years that in fact possessed the defect. Your Honor, Chrysler performed the repair on... Might or might not mean your client's car had the defect. In any event, that occurred after the complaint. Well, Your Honor... According to the hearing right. The repair attempt happened on February 13th, which I think was the same day as the dismissal hearing, Your Honor. But the Chrysler's communications with the public and with NHTSA, Your Honor, state that the defect is caused by the way TRW manufactured the occupant restraint control module. And our client had a control module manufactured by TRW. I don't think there was ever any question in the district court as to whether our client's vehicle had the defect. I don't think even Chrysler or TRW questioned that. Now there is an issue. The defect didn't manifest itself. Their airbag did not explode in their face. But it's made with the same exact components of all of the subject vehicles. And I believe Chrysler was very careful in determining... What was the diagnosis your client received? Thank you, Your Honor. Yes. I mean, it's not in the complaint. The reason they took the... In July 2013, which was about six months after Chrysler sent its defect warning to the plaintiffs, their airbag light illuminated. And in the interim, they had been... I understand all that. I'm asking you why you didn't include in the complaint what the dealership said about what was wrong. I understand, Your Honor. The dealership simply looked at Plaintiff's airbag occupant restraint control module, this is my understanding, and determined that there was nothing they can do because they didn't have the replacement parts. The plaintiffs took the vehicle in because they were concerned that the airbag light going on meant that the airbag was about to deploy. And they just wanted to have the dealership look at it to see if the airbag was about to deploy. In conclusion of paragraph... You define defect with a capital D in the complaint, is that correct? Yes, Your Honor. And that's the defect that's at issue in your allegations? Yes, Your Honor. And you allege at the end of paragraph 29 the dealership was unable to repair the defect capital D? Yes, Your Honor. But the dealership didn't specifically say you had the defect? Or your client's car had the defect? We're supposed to infer that it did. Your Honor, Chrysler had already informed our clients that their car had the defect. But I... Because of paragraph 23 in that notice? Correct. Okay. The dealership also indicated that their vehicle had the defective parts because it told them the replacement parts are not yet available. So I think that's another fact that supports the inference that our plaintiff's vehicle, just like all of the class vehicles alleged, contained the defect. And where in the record does it say that your client submitted to Chrysler a request to be reimbursed for that diagnosis charge? We did not allege that, Your Honor. The language where Chrysler states that you will be reimbursed for any costs associated with the defect relates only to replacing the occupant restraint control module. So if, theoretically, a consumer somehow had had the occupant restraint control module replaced, or I apologize, repaired, to include the in-line filter, then they could submit a bill for that expense. But New Chrysler did not commit. It's not alleged in the complaint. It's not anywhere in any of Chrysler's documents. New Chrysler did not commit to pay or reimburse consumers, such as plaintiffs, who paid for this diagnostic, who paid to have their airbag systems... What were you, in fact, reimbursed for? Nothing. I thought you said you had received that there had been a payment made on the day the hearing was held. No, Your Honor. I apologize if I wasn't clear. Fixed? The fix was attempted. There is an open question as to whether it was actually fixed. But free of charge to you? Yes. Did you pay anything for the diagnosis? In July 2013, yes. They paid approximately $100 out of pocket when they took their vehicle in and said, Is our airbag about to deploy? And the dealer said, Well, look at it. It will cost you. If you got reimbursed immediately for that, would this case be moot as to your client? It would be. The client would have no claim as to the out-of-pocket expenses, Your Honor. There would still be an issue as to whether they had a claim relating to loss of use and enjoyment and as to whether they had a claim for diminished value. But it would take care of out-of-pocket expenses. With regard to the diminished value, if your argument is the car had lost value from the moment it was manufactured because of this defect, that's old Chrysler, not new Chrysler, correct? Correct. So there would be no claim against new Chrysler for the loss of value because it was manufactured by TRW and old Chrysler. There would be no claim against new Chrysler for the period from the date it was manufactured until the date they extended their promise to fix the defect. There would be diminished value after that period until such time as they clearly fixed the defect, which is yet to happen. There would be a claim for diminished value against TRW under the redhibition statute. So you don't make a coal allegation? Your position is that you are not stating that the Fifth Circuit coal diminished value upon purchase argument? We say coal for the proposition that diminished value is recoverable, and it is recoverable upon purchase as to TRW. But we recognize that because new Chrysler didn't manufacture the vehicles, its diminished value liability would commence at the time they issued their contractual obligation or promise to fix the defect. And at this point in time, there's nothing in the record that indicates your client has had any further problems with their airbag after the attempt was made to fix it? With respect, Your Honor, what we have in the record is the subject of our motion for judicial notice in that Chrysler has acknowledged to NHTSA. It's a document in the public domain. Chrysler has acknowledged that vehicles that underwent the remedy attempt are still suffering from inadvertent airbag deployment. Some vehicles, not all? Not all. Not all 700,000 or whatever the number of vehicles have had airbags deployed. And with regard to your specific client, there has been no further problems? Their airbag has not deployed. I apologize. I'm out of time. I'm out of time. If there are no other questions at this time, you are out of time. But if you tell me how much time you want to reserve for rebuttal, I failed to write it down. Your Honor, I reserve three minutes. Thank you. Thank you, Your Honor. And perhaps you could start off by telling me how the defendants wish to divide their time. Yes, Your Honor. We're going to divide it evenly, seven and a half minutes each. Okay. May it please the Court, Kathy Wisniewski for Defendant Appley, FCA U.S., formerly known as Chrysler Group, and I will probably say Chrysler much more often than FCA U.S. because I'm used to saying that. The district court correctly dismissed the complaint for lack of subject matter jurisdiction, and its decision should be affirmed. This was a factual attack that was made on the court's subject matter jurisdiction. Evidence was submitted to show that plaintiffs lacked an injury and or their claims were moot. Plaintiffs never disputed that evidence. They submitted no evidence contrary to that that was in the record, and the court correctly interpreted that evidence to find that the plaintiffs' claims, as pled, were moot and or lacked a cognizable injury under the law. The facts here are pretty simple. Plaintiffs' claims against Chrysler Group were based solely on the notion that Chrysler Group did not act fast enough to provide a promised repair under a recall that was being conducted under the guidance of the federal agency known as NHTSA. There were no allegations of an improper repair. There were no allegations of an inadequate repair. The entire basis of the lawsuit was they promised me a repair several months ago, and they haven't yet provided it. By the time we argued to the district court, as we stood there, the repair had been made available not only to plaintiffs, but to the hundreds of thousands of other vehicle owners who had vehicles with the part that was subject to the recall. As plaintiffs admitted then, and as they again have admitted today, on that day of the argument, 2-13-14, when their vehicle was 10 years old and had 156,000 miles on it, Chrysler Group provided them with a free recall repair. Chrysler Group also at that time, as has been admitted, offered to make plaintiffs and the other hundreds of thousands of vehicle owners whole for any money they paid for prior repairs to their vehicle as a result of this allegedly defective part. So you give them $100 today. Well, Your Honor, the policy, if they submitted a claim, which they have never done, which is why they have not been considered for reimbursement, Chrysler Group routinely, as a matter of policy, reimburses all expenses that are associated with the recalled part. If the diagnostic fee shows up to be associated that there was actually a diagnostic saying this part was malfunctioning in some way, yes, they would be reimbursed. That has always, for years, many years, applied to not just the cost of the part itself, not just the labor to install the part, but associated costs to the extent of even, in some cases, rental vehicles, where the dealership truly did not have the part available and the rental vehicle was taken because of that. What is the basis, then, of the policy that you placed into evidence at the hearing, record 99, page ID 203, that it won't reimburse if the light goes on and the bag doesn't deploy? Have I misunderstood that? That was a direction to the dealer, Your Honor, about making the recall repair. And it was telling the dealer, if you replace the part that's subject to the recall and problems persist, the light's on, the light can come on for a number of reasons. It may have nothing to do with the part at issue. It may not have anything to do with a defect in the vehicle. It may have to do with misuse, abuse. What that was to the dealer was saying was, the repair to the ORC module, which was the subject of the recall, should be charged back to us and given to the consumer for free, along with the labor costs. But if after that you still have problems, the light's on for some other reason, that's the responsibility of the consumer. Your position in the affidavit is, after that, it doesn't mean before. So if someone shows up and says, I'm scared, my light is on, and the dealer says, I don't have the part yet, then it's your position that that policy would not prevent you from paying for that diagnosis? That policy has nothing to do with consumers and what we'll reimburse. That policy was called from a notice given to the dealers about the recall. And what they should submit for them to get paid directly from Chrysler. The dealer, in order to get reimbursed by Chrysler for the repair, has to be sure that the repair is made to something that is in fact defective. It can't be gratuitously making repairs. Is that right? It cannot be making repairs to parts that clearly aren't associated with the recall and telling the consumer, don't worry about it, I'll just charge Chrysler for it. Which is effectively what that direction was. Make sure that the parts are associated with the recall. And the way that Chrysler was telling the dealer to do that was, if you replace these parts and it continues to have some airbag problem, the airbag light stays illuminated or there's some other problem, then that's clearly not associated with the recalled part. It has to be something else wrong because you just put a new part into that vehicle and that part was just installed for free. So if you go about then exploring and then you then find something else wrong, the customer has to be responsible for that. Is there ever anything in the record from the plaintiff that the diagnostic that was done in July showed that the problem related to the recall? There was nothing ever in the record. They have never submitted a reimbursement. Chrysler has no idea whether it has any relationship to the recall. And if they would submit a claim and have it rejected and have a grounds to allege that it should have been reimbursed because it was associated with the recalled part, then perhaps we would have a legal claim here. But they've never submitted a reimbursement. They've never asked for reimbursement. And there was no allegation, nor do I know of any evidence, that shows that they went in and the guy said, your airbag light is on because of this part being recalled. Wouldn't it be, it would seem to be both in the party's interest and certainly in the interest of the court rather than expending any more. I mean, you may be stuck with a class action from somebody if some other plaintiff emerges. But with respect to the dispute involving these plaintiffs, wouldn't it be in everybody's interest to try to figure out what we're going to do about that $100 rather than having the party spend any more time on this and rather than having this court spend more time on this? I mean, we don't think that amount of money is beneath our, I mean, we resolve all disputes that come before us, but we'd rather have something more at issue than $100. Your Honor, I mean, respectfully, yes, I could write a check to the plaintiffs today for $100 and my client would reimburse me. We've tried to resolve this. Unfortunately, that was not successful. Plaintiffs believe that the case should move forward and Chrysler is without a way to address that, I guess, at this point. All right. I see my time is up, Your Honor. It is. I thought you noticed that. Thank you. Good morning, Your Honors. My name is Norman Ankers. I represent TRW. Your Honors, this court may affirm the district court's ruling for any reason which is supported by the record, regardless of whether the district court adopted or articulated it. There is a very clear alternative basis for this court's affirming  which goes to the plaintiff's attorney, about cars that were purchased or leased in Louisiana at least nine years before the complaint was filed and whose putative class plaintiffs, in particular, had their car delivered to them via lease in September 2002, which is nearly 11 years prior to the filing of this lawsuit on August 27, 2013. And that's the statute of limitations. Your Honor, under relevant conflict of laws principles, the command of Erie, Claxon v. Stentor, this court looks to Michigan statute of limitations, and there is, in fact, a clear bar, and that is MCL 600.5805.13. That is Michigan statute of limitations pertaining to torts. Plaintiffs conceded that this was the statute of limitations that applied. This is a redhibition cause of action which is brought under Louisiana law. There is no redhibition cause of action under Michigan law, so you look to the most closely analogous statute. Plaintiffs conceded it was the tort statute. That statute is a three-year statute of limitations. And under MCL 600.5827, the claim accrues, and I quote, at the time the wrong upon which the claim is based was done, regardless of the time when damage results, close quote. There is no discovery rule under the operative Michigan statute. So when plaintiffs say, as they did in their reply brief, at page 25, and I quote, TRW's redhibitory defect did not begin harming plaintiff until the defect was publicly disclosed in February 2013, that doesn't state Michigan law with respect to the statute of limitations. The statute doesn't, and under Michigan jurisprudence, you don't accrue at the time the harm takes place. You do it at the time the wrong occurred, and that was no later than September of 2002. That was 11 years ago for this class plaintiff, and at least nine years ago for all of the other plaintiffs. Your argument was not the basis of the district court's decision, correct? It was not, but it was briefed both in the district court and briefed before this court. And the reason why the court didn't consider the statute of limitations argument was that once it had decided to dismiss on jurisprudential standing grounds, the court declined to consider other bases for dismissal. But this court, Judge Duggan, has looked at the very statute that we're talking about here, which applies, the three-year statute, and that was in the Peter v. Stryker case, which is 581 F sub 2nd, 813. He dismissed the case on statute of limitations ground, and he would do the same thing. So the claim is absolutely time-barred. The only other alternative would be to consider that it's a contract statute of limitations. Redhibition cases sound in contract, even though they're tort claims. If you use the Michigan contract statute, that would be the UCC statute of limitations. That's MCL 440.2725. And under 440.2725, and I quote, a cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, close quote. So whether you use the three-year statute or the four-year statute, this one is just way time-barred and had no business coming to the court in the first place. There's a... I mean, your briefing of this... No, here, never mind. Forget that. I found it. I was having trouble finding that applicable part of your brief, and I thought I'd located the whole thing earlier. Okay, go ahead. Thank you, Anna. There is one other alternate basis, which I'll touch on very briefly, which we also briefed, and was briefed in the lower court, and that is there's not even a redhibition cause of action under Louisiana law. If one looks at the redhibition statutes in Louisiana, it talks all about sellers and buyers and what sellers warrant to buyers. The statute, for example, talks about how the seller has noticed an opportunity to cure under Section 2522. That statute doesn't make any sense applied to a component manufacturer, which is what TRW was here. Actually, technically, they sued the wrong TRW. There was a different affiliate of TRW that actually did the manufacture. We pointed that out to the district court. The Louisiana Supreme Court has never extended the redhibition statute to claims which are brought against component manufacturers in vehicles, and that would be another alternate basis for dismissing it. And as the court knows, its obligation under Erie is to predict what the highest court of Louisiana would do under Morales v. American Motor Co., Inc., 151 F. 3rd, 500. Those are two alternate bases. Each one is independently sufficient, and for those reasons we would ask for affirmation. Is it fair to say that although this argument was raised in your brief, it was in plaintiff's? The reason we haven't heard all this before is because plaintiff's reply brief introduces the notion of a tort limitation, statute of limitations, being applicable, and you didn't then have an opportunity to reply to that further. So the first thing we've heard about no discovery rule, directly about no discovery rule being applicable under Michigan law, is in this argument. That is correct, Your Honor. I knew it all wasn't ringing a bell with me, and I had to unpackage it to figure it out. And on that point, there is a Michigan Supreme Court case, which is right on point, and it's called Trentadue v. Gordon on the discovery rule, which is 479 MISH 378. Okay. I've got it in place now. That's all I have, unless the Court has any questions. All right. Mr. Fida. Thank you, Your Honors. I would like to address a few points in rebuttal. The first is this issue as to whether the airbag light illumination that plaintiffs experienced in July 2013 is related to the airbag defect. We believe it is, and it's speculation at this stage to say that it's not related. If you look at the language of Chrysler's notice, which is alleged in paragraph 23, it clearly states, and we've discussed this, that a damaged computer chip could cause the airbag light to illuminate, followed almost immediately by an inadvertent deployment of the front airbags. So it's the damaged computer chip causes the airbag light to illuminate, followed almost immediately by the airbags deploying. Now, in hindsight, we can say it did. I'm sorry. Doesn't the record reflect that your clients continued to drive it after it illuminated? It did not immediately deploy. I mean, it was some time between when it illuminated and when they actually took it to the Chrysler dealer for the diagnosis, right? Right. When the problem persisted, they took it because they were fearful, and they don't have a choice not to drive their vehicle. They did continue to drive it. But the important thing is to say that the plaintiff should be charged with notice that their airbag light illumination was unrelated to the defect is, in our view, improper for two reasons. One, it requires them to have a technical understanding of what Chrysler is saying. Two, it requires them to believe that everything Chrysler is saying about this defect is true. Was that Chrysler's argument or was Chrysler's argument that if it has a relationship, you submit a reimbursement and will be paid for the money? It appeared to me that Chrysler said if there are money damages, then there could be a claim stated, which the law seems to support. Help me understand your allegations regarding why you have suffered the damage. The damage, they suffered the damage because it followed a triggering event that Chrysler warned of. And the judge's order acknowledged that you had alleged a defect and told them that you spent $100? Correct. Yes, Your Honor. All right. So how do you respond to the argument that the affidavit that says we won't pay is between the dealer and Chrysler itself and not an instruction that governs damages to you since the instruction to you is a reimbursement provision? For that issue, I would look directly at the language that Chrysler provided to its dealerships. And it didn't say this is between us or that we may reimburse the customer. It clearly says that the cost to make repairs is the responsibility of the owner. What does the notice to the consumer say about expenses? I believe it says that if, you know what, Your Honor, I cannot remember what it says. Okay. So we just need to look at that. But I will say that the airbag light, I apologize, I'm out of time. There are no other questions. You are out of time. Are there other questions? Okay. Thank you all for your argument, and we'll consider the case carefully.